(59 App. Div. 217.)

### In re LYMAN, State Commissioner of Excise.

(Supreme Court, Appellate Division, Second Department.　March 15, 1901.)

1. LIQUOR TAX LAW—CERTIFICATES—NUMBER REQUIRED—DIFFERENT BARS.
　　Under Liquor Tax Law, § 11, subd. 6, a person engaged in trafficking in liquors must have as many tax certificates as he has different and distinct bars or places where liquor is sold.

2. SAME — SURRENDER — REBATE— REVOCATION—PROPERTY RIGHT—TRIAL BY JURY.
　　Under Laws 1897, c. 312, § 25, providing that a liquor tax certificate may be surrendered at any time before the expiration of the term for which it was issued, and a rebate received thereon, provided the holder has not violated the liquor tax law, and thereby rendered his certificate liable to cancellation, an order canceling a certificate so surrendered may be made without a previous jury trial and conviction of the holder for selling liquor contrary to law, since the right to surrender the certificate and receive a rebate is not an absolute property right, but is a privilege granted by the legislature, to which it may annex such conditions as it sees fit.

3. SAME—ASSIGNMENT.
　　An assignment of a liquor tax certificate will not entitle the assignee to surrender the certificate and receive a rebate therefor, where his assignor has rendered such certificate liable to revocation by violating the liquor tax law within 30 days after the surrender of the certificate by the assignee.

4. SAME—VIOLATION OF LAW—PERSONAL DISABILITY.
　　In a proceeding for the cancellation of five liquor tax certificates, all issued to one person for different places, it appeared that the law had been violated at the places for which four of the certificates were issued, but not at the place designated in the remaining certificate. *Held* sufficient to justify the revocation of the certificate covering the place where there was no violation of the law, since the law deals with the person who holds the certificate, and will not allow the person who breaks the law at one place to receive its protection at another.

5. SAME—APPLICATIONS FOR REVOCATION—JOINDER.
　　Applications for the revocation of five liquor tax certificates, all issued to one person, may be properly joined in one proceeding.

Appeal from special term, Kings county.

Petition of Henry H. Lyman, state commissioner of excise, for an order revoking and canceling liquor tax certificates issued to William Texter. From an order granting the petition (67 N. Y. Supp. 48), respondent appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Hugo Hirsh, for appellant.
Royal R. Scott, for respondent.

JENKS, J.　Four of the five certificates in question in this proceeding were issued for terms beginning, respectively, on June 1, 1900. On September 1, 1900, these four were delivered to the special deputy commissioner of excise for Kings county for surrender and rebate. Of these, No. 10,551 was issued for "Ulmer Park Pier, Ulmer Park, Brooklyn"; No. 10,552 was issued for "Main Pavilion Annex, hotel foot of 25th avenue, Ulmer Park, Brooklyn"; No. 10,553 was issued for "Bowling Alley, 25th avenue, near Bay 38th street, Ulmer Park,

Brooklyn"; No. 10,554 was issued for "hotel and picnic grounds, foot of 25th avenue, between Bay 38th and 40th streets, Ulmer Park, Brooklyn." The certificate not surrendered—No. 10,375—was issued for "S. W. of Harway avenue, between Bay 38th and Bay 40th streets, Ulmer Park, Brooklyn." Ulmer Park is a picnic ground, or open-air pleasure resort, of about two acres, lying between Harway avenue, the ocean, Bay Thirty-Eighth street, and Bay Fortieth street. Twenty-Fifth avenue runs through it, and either side of the park is fenced in. The special agents who went there after September 2d, and in that month, before the 25th thereof, found that the "bowling alley" was a separate inclosed building, with windows and doors, at one end of which was a bar, with the "different accompaniments of a bar,—a place to draw beer, and other things, such as are usually found in hotels, saloons, and barrooms," and beer and liquor were served over the bar. The "pier" was 200 or 300 feet distant, and was about 1,600 feet long. At its end was a small frame building and a canopy pavilion, where was placed another bar, with "all the appliances of a bar." There was a counter, and a buffet containing bottles. The "picnic pavilion" was opposite the bowling alley, and 300 or 400 feet from it, inclosed, with a large main floor, with glass windows. This also contained a similar, but larger, bar, "with all the necessary paraphernalia for drawing beer and serving liquors," and people were served therefrom. There was still another large rectangular building between the bowling alley and the pier, with a long bar, inclosed by a partition and with doors, and liquor was served therefrom. There was also a hotel near Harway avenue, and some 700 or 800 feet from the bowling alley, with a similar bar. Beer and whisky were served over all these bars at these different places. One of the applicant's witnesses testified that the licensee, some time after November 25, 1899, told him that he had five certificates for various places in Ulmer Park; that he had surrendered four of them about September 1, 1899; that he still retained one; that the nature of his business was such that he required only one, and on that he was doing all that he should be required to do in keeping one the whole year and the other four for the busy season, or picnic season. The licensee also said that he had been in control and that he did control Ulmer Park since the time prior to the 1st of May, 1899, employed the various persons there, that they were all his employés, and that whatever liquor was sold was sold for him by his employés. This conversation was not denied. Subdivision 6, § 11, of the Liquor Tax Law provides:

"If there be more than one bar, room or place on the premises * * * at which the traffic in liquors is carried on under any subdivision of this section, a like additional tax is assessed for each such additional bar, room or place." ·

The testimony shows that there were five different bars in so many separate buildings, each independent of the others in its capacity to dispense liquors. In Re Lyman, 40 App. Div. 46, 57 N. Y. Supp. 634, affirmed in 160 N. Y. 96, 54 N. E. 577, we said, per Cullen, J.:

"We concede that under the law, if a second barroom, or place distinctively for the sale of liquors, is maintained, an additional tax certificate must be taken out to cover it."

In that case we simply decided that beer, wine, or liquor might be served outside of the barroom where but a single barroom or place of that character was maintained, inasmuch as such a practice seemed to be contemplated by the statute itself. A sale made after the surrender of a certificate is illegal. Proceedings brought within 30 days cancel the certificate, and any rebate thereon is forfeited. Section 25, Liquor Tax Law; In re Michell, 41 App. Div. 271, 58 N. Y. Supp. 632. But the learned counsel for the appellant contends that a previous conviction for a violation of the liquor tax law must be proven before a certificate can be canceled. In Re Lyman, 160 N. Y. 96, 101, 54 N. E. 577, semble, that a conviction was prerequisite. But on motion for reargument (161 N. Y. 119, 55 N. E. 408) the court said that the specific point must be regarded as still open, and that it would not regard itself concluded by any statement in the original opinion. In Re Livingston, 24 App. Div. 51, 48 N. Y. Supp. 989, in answer to the contention that before the applicant could be deprived of his certificate he was entitled to trial by jury under the constitution, since the certificate was property, of which he could not be deprived without due process of law, the court said:

"We have held that these certificates are property. People v. Durante, 19 App. Div. 292, 45 N. Y. Supp. 1073. They were made so by provisions of the liquor tax law, but the legislature which gave the certificate the character of property had power to, and did by the same act, provide both for their issuance and cancellation, and under what circumstances they should be valid, and when and how they might be revoked. The character given them as property was subject to all these provisions attached to them when they were created. Applicants take them with all the privileges and subject to all the burdens imposed upon them by the liquor tax law."

This excerpt was cited in Re Lyman, 46 App. Div. 387, 61 N. Y. Supp. 884, where the contention that the liquor tax certificate was property which could not be taken away in a summary proceeding, and that there must be trial by jury, was fully discussed in a learned opinion by Hardin, P. J., who had before him both the decision in 160 N. Y., 54 N. E., and the opinion of the court on the motion for reargument, reported in 161 N. Y., 55 N. E., supra. In re Campbell, 46 App. Div. 634, 61 N. Y. Supp. 1133, which was decided on the opinion in Re Lyman, supra, was affirmed on the opinion of the court below. 162 N. Y. 612, 57 N. E. 1106. The learned counsel for the appellant calls attention to the fact that the question determined in the latter case was that defendant was not entitled to trial by jury; but he overlooks the fact that the position taken by the licensee was based upon the ground that the certificate represented property, and that, therefore, a summary proceeding was unlawful, for the reason that a property right was affected. The learned counsel also points out that In re Lyman, supra, was followed by this court in Re Lyman, 60 N. Y. Supp. 805. Examination of our opinion shows that the court held itself concluded by the court of appeals decision, which, as I have shown, was modified by that of 161 N. Y., 55 N. E., supra. In re Halbran (Sup.) 63 N. Y. Supp. 1026, did not touch this question, and in its opinion the court simply stated what had been decided by the court of appeals. 160 N. Y. 96, 54 N. E. 577. It is true

that it is now held that the certificate constitutes a contract between the person who receives it and the state for the absolute right to traffic in liquors for a year, of which he can only be deprived by some violation of the law, so long as the statute is in force; and that such right may be regarded in a sense as property of the holder. In re Hilliard, 25 App. Div. 222, 225, 49 N. Y. Supp. 286, affirmed in 155 N. Y. 702, 50 N. E. 1118. But it is a contract that can be canceled, and the rights thereunder forfeited, for a violation of the law. Id. The precise question before us, however, is limited to the rebate. This is not a return of the tax, or any part thereof, on account of a deprivation by the state of the right. It is the holder who cancels his contract and surrenders his right. The state says to him, in effect, "If you surrender your right, and have not violated this law, and do not violate it for thirty days thereafter, you shall receive a rebate." The contract itself gives him no right to rebate, and none is inherent in case he choose not to avail himself of it; while the law affords none save under certain conditions whose fulfillment is entirely in his own hands. Thus it is that the court of appeals held in People v. Lyman, 156 N. Y. 407, 411, 50 N. E. 1112, that the right to rebate is so qualified as not to be absolute. Such a proceeding as the one at bar but cancels the certificate for violation of the law. It does not convict the defendant of any crime, nor does it deprive him of any absolute property right. It but precludes him from maintaining his claim, upon throwing up his contract, to that which was made his due solely by a law which provided that he might receive it if he did not violate the provisions thereof. In other words, the vice in the appellant's argument is in his premise that the rebate is an absolute property right in any holder who surrenders the certificate, while the law makes it but a qualified right.

It is well settled that proceedings for the cancellation of a liquor license do not require a jury trial. People v. Board of Com'rs of Police & Excise of Brooklyn, 59 N. Y. 92; Same v. Wright, 3 Hun, 306; Same v. Haughton, 41 Hun, 558; Same v. Meyers, 95 N. Y. 233. The learned counsel for the appellant contends that, inasmuch as section 18 of the law provides that the commissioner of excise may at any time, without previous prosecution or conviction for violation of any provision of the law, proceed upon the bond, the intent of the act is that a liquor tax certificate cannot be forfeited in a summary proceeding in the absence of a conviction for a violation of law. The intent and purpose of this provision are adequately discussed and correctly stated in Lyman v. Insurance Co., 37 App. Div. 234, 55 N. Y. Supp. 770, and I see nothing in such provisions which makes for the construction contended for. The contention further is that as to two of the certificates the violation of law, if any, was by third parties. The answer of the respondent in the proceedings set forth that, incidental to his business, it was necessary for him to distribute and sell throughout the entire grounds of the park, and for that purpose he maintained at different points places from which, through waiters, he distributed beers and other liquors to guests; and that on the 9th and 14th days of September, when it was alleged that he sold liquors in violation of law, there were picnics

upon his grounds, and distribution of liquor was made at various points. Further, he did not contradict the testimony already alluded to as to the sales being made for him and by his employés. Before the referee he did testify that he had leased the pier and the bowling alleys to two different persons, that he had no control over the places, and no knowledge of their violation of the law. But these violations were made at the respective places for which the certificates had been issued. In Re Lyman, supra, we said, per Cullen, J.:

"Having permitted the use of the certificate by Stevens for the sale of liquor at the bar or place specified in the certificate, it may be that, for any infraction of the law there committed, or committed in connection with the business there carried on by Stevens, the company would be responsible."

The opinion for affirmance in the court of appeals (160 N. Y. 100, 54 N. E. 578) contains these words:

"There is nothing in the record to show that they intended or authorized its use in any other than a lawful way. It may be that for any violation of law committed by him at the place designated the company or its property might be responsible."

See, too, People v. Meyers, 95 N. Y. 223, 225.

The policy of the law contemplates that the certificate is a privilege to the person named to traffic at the place named therein; not to that person to traffic at any place or to any other person to traffic at that place. The assignment on September 1, 1899, to the Ulmer Brewery, for rent owed, was not a sale, assignment, and transfer, contemplated by the act (section 27), whereby the vendee or assignee acquired the right to traffic in liquors, nor was it attended by the formalities required by the section for that purpose. The only persons who are permitted to surrender a certificate for rebate under the act are those who are authorized to sell liquors, and who shall voluntarily cease to traffic thereunder. No valid application could be made for such surrender by the said assignee save in the name or in behalf of the respondent who had received the certificate. Such assignee, so far as any right to the rebate was concerned, suffered under the same disabilities as did the holder of the certificate. In re Michell, 41 App. Div. 271, 58 N. Y. Supp. 632; In re Lyman (Sup.) 56 N. Y. Supp. 1020; People v. Lyman, supra. The only question presented in Re Lyman, 53 App. Div. 331, 65 N. Y. Supp. 673,— not cited by either counsel,—is whether the court lost jurisdiction of the proceeding by extending the return day of the order to show cause from the granting of the original order for the purpose of obtaining service upon Maloney, to whom the certificate was issued; while, in the course of the opinion, the court stated that the assignee's right to rebate depended upon the conditions prescribed by statute, namely, the conduct of the party to whom the certificate is granted during a specified time, viz. 30 days, from the receipt of the certificate by the state commissioner of excise; and the order of the special term directing the revocation and cancellation of the certificate for such violation by Maloney was thereon affirmed.. The learned counsel for the appellant would differentiate the case because, he says, the assignments were absolute. That is not the point. The question turns upon the right to apply for and receive

the rebate, and the assignment, whatever its character, was not one that, in the eye of the law, substituted the assignee as one entitled thereby to traffic in liquors, while such a one alone is entitled to proceed for the rebate. Id.

It is also urged that as to the one certificate outstanding there is no proof of any violation of law by the respondent at the place for which such certificate is issued, but I think the policy of the law is to prohibit him who has violated the law from holding any certificate; not to permit him if he holds, for example, two certificates for different places, to hold his certificate for one place where there is no infraction, no matter how much the law may be broken at the other. The policy of the law deals with the person who vends. There is the personal equation. And the law will not resolve him into dual personalities, nor localize his offense. Such, I think, is the construction to be given to section 28, subd. 2, of the liquor tax law.

I see no valid objection to such joinder of proceedings as was had in this case. I find no prohibition against it, while section 42 of the law does authorize that two or more penalties may be sued for in the same action. The violations and acts charged are the same. I think that the order should be affirmed, with costs. All concur.